In re COUNTRY BOY WATERBEDS, INC. and Country Boy Waterbeds of TN, Inc., Debtors.

Bankruptcy Nos. 3–88–01905(11), 3–88–01906(11).

United States Bankruptcy Court, W.D. Kentucky.

May 9, 1989.

Michael D. Risley and Kenneth R. Sagan, Louisville, Ky., for Heilig–Meyers Co.

James R. Higgins, Jr., Thomas W. Frentz, David J. Kellerman, Louisville, Ky., for debtor.

Joseph J. Golden, Louisville, Ky., U.S. Trustees Office.

---

## MEMORANDUM OPINION AND ORDER

HENRY H. DICKINSON, Bankruptcy Judge.

This matter is before the Court on Heilig–Meyers Company's motion requesting the allowance and payment of an administrative expense for post-petition rent due with respect to premises leased by Heilig–Meyers to Country Boy Waterbeds of Tennessee, Inc. Heilig–Meyers seeks administrative expense status for the lease rental rate of $266.80 per day beginning with the period of August 1, 1988 (the filing date of the Chapter 11 petition) until October 27, 1988 (the date the Court entered an order approving the debtor's rejection of said lease) as an actual, necessary cost and expense of preserving the debtor's estate. The post-petition amount sought is $23,-478.40.

This motion was properly noticed for objections, wherein the debtor filed a timely response objecting to the request by Heilig–Meyers. In its response the debtor concedes that Heilig–Meyers is entitled to post-petition rent as an administrative expense from August 1, 1988 until September 9, 1988 ($10,672.00) as the debtor actually used the premises during this period. The debtor insists, however, that Heilig–Meyers administrative expense status should terminate for rent due after September 9, 1988 as the debtor had consummated its Court approved sale of inventory to Big Sur on September 9, 1988 and thereafter the debtor no longer occupied the leased premises. The Nashville location continued to contain significant amounts of inventory sold to Big Sur by the debtor after September 9, 1988 but the debtor simply maintains that the stored inventory was then the property of Big Sur and therefore Big Sur's obligation. The inventory actually remained upon the leased premises in Nashville until about September 27, 1988, some 18 days after the sale to Big Sur was consummated, whereupon the inventory was removed and the leased premises vacated.

The debtor made a formal motion seeking court authorization for the rejection of the Heilig–Meyers lease on September 23, 1988 and after a hearing on October 27, 1988 an order was entered by the Court on that date approving and authorizing the rejection of the Heilig–Meyers lease by the debtor.

The key dates involved in a resolution of this matter are as follows:

August 1, 1988—Petition filed

September 9, 1988—Big Sur sale consummated

September 23, 1988—Debtor moves to reject Heilig–Meyers' lease

September 27, 1988—Leased premises vacated

October 27, 1988—Court approves rejection of lease

Both the debtor and Heilig–Meyers agree that Heilig–Meyers is entitled to an allowance for administrative expense for post-petition rent in some amount. They agree that the post-petition rent should be allowed beginning August 1, 1988 and calculated at the rate of $266.80 per day. The only thing not agreed upon is the length of time. It is not too surprising to discover that Heilig–Meyers insists that it is entitled to the greatest number of days possible, from August 1, 1988 until October 27, 1988, the date when the Court entered an order approving and authorizing the debtor's rejection of its lease. On the other hand, it is likewise not surprising to find that the debtor insists that Heilig–Meyers is entitled to the smallest number of days possible, from August 1, 1988 until September 9, 1988, the date the sale to Big Sur was consummated. Put in its simplest terms, the legal issue to be resolved by the Court is: When should one stop counting days? Or more astutely stated: Under the fact scenario as set forth above, at what point in time did the debtor's rejection of the Heilig–Meyers lease become effective so as to toll the accumulation of its administrative expense claim?

Both parties have filed *excellent* briefs with the Court suggesting various dates when the debtor's rejection should become effective. The debtor, in its final brief, suggests either September 9 or September 23, with September 23 being "absolutely the last day" for post-petition rental allowance. Heilig–Meyers insists steadfastly to the end that October 27 is "the only date"

which the Court should adopt as constituting effective rejection of the lease. The Court has considered all of the arguments and authorities cited by both parties and for the reasons hereinafter set forth declines to accept any of the dates suggested by the parties as the controlling date to "stop counting the days." The date which the Court fixes as the effective date of debtor's rejection is October 1, 1988, that date being the 61st day following the entry of the order of relief.

Section 365(d)(4), the sixty-day rule for leases covering nonresidential real property, is the controlling code section to resolve this question. Since its adoption in 1984, the trustee or debtor-in-possession has been required by this rule to either assume or reject any nonresidential real estate lease within sixty days of the entry of the Order of Relief. The rule further provides that if no move is made by the debtor to assume within this sixty-day period then the lease is deemed rejected. Clearly, in order to assume a nonresidential real estate lease a motion to do so must be filed within the sixty-day period or at some later date fixed by the Court within the sixty-day period.

Based on this sixty-day rule, it is correct to state that in the absence of a timely motion to assume, the nonresidential real estate lease is rejected by operation of law. The rule further provides that this automatic rejection is followed by a requirement that the debtor "shall immediately surrender" the leased property to the lessee. Therefore, in the absence of a timely motion to assume, the nonresidential real estate lease is lost forever as an asset of the estate, it has been rejected by operation of law and the property must be immediately surrendered to the lessor for him to do with as he pleases. In short, the nonresidential real estate lease is effectively rejected when the debtor fails to take timely action to assume it.

Heilig–Meyers argues however, that if the debtor actually files a motion to reject within the sixty-day period, then the debt-or's rejection can only become effective when the Court enters an order approving such a motion. In other words, Heilig–Meyers insists that the filing of a motion to reject somehow extends the sixty-day period which the debtor has to assume. This argument overlooks the express provision of 365(d)(4) that a nonresidential real estate lease is rejected by operation of law in the absence of a timely motion to assume.

Once the sixty-day period has run and there has been no motion filed by the debtor to assume the lease nor has the Court fixed a later date for the debtor to do so, then the debtor loses his ability to assume the lease and the rejection of the lease at that juncture became automatic. The order which the Court entered in this matter on October 27, 1988 was nothing more than a procedural formality.[1] When the Court entered its order on October 27, 1988, the Heilig–Meyers lease had already been effectively rejected by operation of law.

Accordingly, IT IS ORDERED that Heilig–Meyers' motion for administrative expense is hereby sustained and the amount of its claim of administrative expense is fixed at $16,274.80 (61 days at $266.80 per day).

---

1. That sounds better than calling the entry of the Court's order a meaningless gesture or without significance.